UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MCGLYNN,<br><br>                              Plaintiff,<br><br>          -against-<br><br>THE COOLS, INC.,<br><br>                              Defendant. | 19cv03520 (GBD) (DF)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

Currently before this Court in this copyright-infringement action – which has been referred to this Court for general pretrial supervision and to report and recommend on dispositive motions (*see* Dkt. 21) – is a motion by plaintiff David McGlynn ("Plaintiff") for a default judgment against defendant The Cools, Inc. ("Defendant") (Dkt. 14).  For the reasons set forth below, I respectfully recommend that the motion for a default judgment be granted, and that Plaintiff be awarded $5,000 in statutory damages for Defendant's infringement of Plaintiff's copyright, as well as $1,512.50 in attorney's fees (provided Plaintiff's counsel confirms to the Court that the presented summary of his time was taken from contemporaneously made records), and $400 in costs.

## BACKGROUND

### A.    Factual Background

For purposes of this motion, the factual allegations of Plaintiff's Complaint, dated April 21, 2019 ("Compl.") (Dkt. 1), are presumed true (*see* Discussion, *infra*, at Section I(B)). Based on the Complaint, as well as, where indicated, Plaintiff's Motion for Default Judgment, filed December 3, 2019 (Dkt. 14), the Declaration of Richard Liebowitz in Support of the Motion

for Default Judgment, dated December 2, 2019 ("Liebowitz Decl.") (Dkt. 15), and the Declaration of David McGlynn, dated May 14, 2020 ("McGlynn Decl.") (Dkt. 24), the relevant events that gave rise to this action may be summarized as follows:

Plaintiff is a professional photographer, based in New York, New York, who licenses his photographs to online and print media.  (Compl. ¶ 5.)  He is the author of a photograph of an individual named Malcolm Abbott (the "Photograph"), and "has at all times been the sole owner of all right, title and interest in and to the Photograph, including the copyright thereto."  (*Id.* ¶¶ 7, 8.)  Plaintiff asserts in his Declaration that the Photograph was first published on March 13, 2019, in the *New York Post*.  (McGlynn Decl. ¶ 2, *see also id.*, Ex. A (copy of *New York Post* article, displaying Photograph).)

Defendant, a Delaware corporation with a place of business in New York, New York, owns and operates the website www.MCools.com (the "Website").  (Compl. ¶ 6.)  On March 14, 2019, Defendant ran an article on the Website entitled "What Not to Wear When Your Parents Scammed Your Way Into College," which featured the Photograph.  (*Id.* ¶ 10; *see also id.*, Ex. B (screenshot of article and Photograph on Website).)  According to Plaintiff, Defendant did not license the Photograph from Plaintiff for this article, and Plaintiff did not otherwise grant Defendant permission or consent to publish the Photograph on the Website.  (*Id.* ¶ 11.)

After Defendant's publication of the Photograph, Plaintiff registered the Photograph with the United States Copyright Office, and the Photograph was given Copyright Registration Number VA 2-144-547, with the effective date of March 27, 2019.  (*Id.* ¶ 9; McGlynn Decl. ¶ 3; *see also id.*, Ex. B (copy of online search result in U.S. Copyright Office Public Catalog, apparently showing Photograph as part of a group registration of 26 photographs).)

###### B.      **Procedural History**

Plaintiff filed his Complaint in this action on April 21, 2019, claiming that Defendant

willfully, intentionally, and purposefully infringed Plaintiff's rights, in violation of Section 501

of the Copyright Act of 1976, 17 U.S.C. § 101, *et sec*. (the "Copyright Act" or the "Act").  (*See*

*generally* Compl.)  Plaintiff sought actual damages and disgorgement of Defendant's profits,

pursuant to 17 U.S.C. § 504(b) (*id*. ¶ 16), or, in the alternative, statutory damages in the amount

of "up to $150,000 per copyrighted work infringed, pursuant to 17 U.S.C. § 504(c)" (*id.* ¶ 17).

The Docket reflects that, on April 23, 2019, Defendant was served with a Summons and the

Complaint.  (Dkt. 6.)

When Defendant failed to move, answer, or otherwise respond to the Complaint, the

Clerk of Court issued a Certificate of Default on July 3, 2019.  (Dkt. 9.)  On December 3, 2019,

Plaintiff proceeded to file a Notice of Motion for Default Judgment (Dkt. 14) and supporting

papers, including a Declaration by Plaintiff's counsel (Liebowitz Decl.), a Statement of Damages

(Dkt. 16), and a Proposed Default Judgment (Dkt. 19).  In lieu of actual damages, Plaintiff

requested statutory damages in the amount of $30,000, as well as $2,975 in attorney's fees and

$440 in costs, pursuant to 17 U.S.C. § 505.  (Liebowitz Decl. ¶¶ 14, 15.)  According to an

Affidavit of Service filed by Plaintiff (Dkt. 22), Defendant was served on February 3, 2020 with

these motion papers, together with a copy of the Order of the Honorable George B. Daniels,

U.S.D.J., referring the motion to this Court.

Upon its review of Plaintiff's motion, this Court discovered that certain facts relevant to

Plaintiff's damages request – specifically, the date of first publication of the Photograph and the

effective date of Plaintiff's copyright registration – had not been included in the Complaint, and

had been provided to the Court only by way of the submitted Declaration of Plaintiff's counsel,

without documentary support.  By Order dated May 8, 2020, this Court therefore directed

Plaintiff to supplement his submissions so as to ensure that the relevant information was placed

before the Court by someone with personal knowledge or through properly authenticated

documentation.  (Dkt. 23.)  On May 14, 2020, Plaintiff responded to this Court's Order by

submitting his own Declaration, setting forth the requested information.  (McGlynn Decl.)  It

appears that Plaintiff served a copy of the McGlynn Declaration on Defendant on the same date

that it was filed.  (*See* Dkt. 25.)

As of the date of this Report and Recommendation, Defendant has neither responded to

Plaintiff's submissions nor requested a damages hearing (*see generally* Dkt.), and this Court will

therefore proceed to consider the matter based solely on Plaintiff's submissions.

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Default Judgment Under Rule 55

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of Court shall

enter a default against a party who "has failed to plead or otherwise defend" an action.

Fed. R. Civ. P. 55(a).  Once the default has been entered, the district court, upon application of

the party entitled to a judgment by default, may enter a default judgment against the defaulting

party.  Fed. R. Civ. P. 55(b).  The decision to grant a motion for default judgment lies in the

discretion of the trial court.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

Before a default judgment may be entered, however, the court must be satisfied that the

complaint states a claim upon which relief can be granted.  *See Au Bon Pain Corp. v. Artect, Inc.*,

653 F.2d 61, 65 (2d Cir. 1981) (recognizing court's authority, even after default, to determine

whether plaintiff has stated a cause of action).

**B.**   **Damages Upon the Defendant's Default**

While a "default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," it does not reach the issue of damages.  *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (internal quotation marks and citation omitted). Moreover, "[i]n the event of a default, although a complaint's factual allegations are presumed true, "damages allegations are not entitled to the same presumption."  *Jerstad v. New York Vintners LLC*, 18cv10470 (JGK) (OTW), 2019 WL 6769431, at *2 (S.D.N.Y. Dec. 12, 2019) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *report and recommendation adopted*, 2020 WL 58237 (Jan. 6, 2020).  Rather, the plaintiff must provide a sufficient "evidentiary basis for the specific damages amount sought." *Id.* (citing *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 292 (S.D.N.Y. 2016)).  Although a plaintiff is entitled to all reasonable inferences in its favor based upon the evidence submitted, *see U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation), if a plaintiff fails to prove damages to a reasonable certainty, then the court should decline to award damages, even where liability has been established, *see Lenard v. Design Studio*, No. 08cv10560 (JPO), 889 F. Supp. 2d 518, 538 (S.D.N.Y. Aug. 24, 2012) (adopting report and recommendation).

**C.**   **Damages for Copyright Infringement Claims**

To state a claim for copyright infringement under 17 U.S.C. § 501, a plaintiff must allege "(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant infringed the copyright."

*Klauber Bros., Inc. v. Jenny Yoo Collection, Inc.*, No. 16cv9260 (LLS), 2017 WL 4082483, at *2 (S.D.N.Y. July 18, 2017) (internal quotation marks and citation omitted).

If a copyright claim has been adequately pleaded, entitling the plaintiff to a default judgment under Rule 55, then the prevailing plaintiff may elect the type of available damages to pursue.  As relevant here, the Copyright Act allows a plaintiff in an infringement case to elect to recover an award of statutory damages for each infringed work, rather than an award of actual damages, *see* 17 U.S.C. § 504(c), provided certain requirements have been met regarding the timing of the plaintiff's copyright registration, *see* 17 U.S.C. § 412.[1]  Pursuant to Section 504(c), statutory damages "are available without proof of plaintiff's actual damages or proof of any damages."  *Reservoir Media Mgmt., Inc. v. Craze Prods.*, No. 13cv1847 (GHW), 2015 WL 5692105, at *5 (S.D.N.Y. Sept. 28, 2015) (internal quotation marks and citation omitted).  An infringer may be liable "'in a sum of not less than $750 or more than $30,000 as the court considers just' for any work infringed."  *Id.* (quoting 17 U.S.C. § 504(c)(1)).

Further, if the court finds that the infringement was willful, it may, in its discretion, increase the statutory damages award "to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).  Generally, a copyright holder seeking to prove that a copier's infringement was willful must show that the infringer "had knowledge that its conduct represented infringement

---

[1] Section 412 provides, *inter alia*, that where a defendant engages in an infringing act prior to the effective date of the plaintiff's copyright registration, the plaintiff will be barred from recovering statutory damages (or attorneys' fees) under the Act, unless the registration is made "within three months after the first publication of the work."  17 U.S.C. § 412(2); *see Cordon Holding C.B. v. Nw. Publ'g Corp.*, No. 98cv4797 (KNF), 2005 WL 589405, at *8 (S.D.N.Y. Mar. 11, 2005) (holding that plaintiff could not recover statutory damages because the pertinent copyright registrations "were not effected within the three-month grace period"); *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 400 (S.D.N.Y. 2002) (awarding statutory damages where registration occurred after unpermitted use of original work, but within three months of original work's first publication).

or . . . recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993).  When a defendant has defaulted, however, it "is deemed to be a willful infringer by virtue of its default." *CJ Prod. LLC v. Your Store Online LLC,* No. 11cv9513 (GBD) (AJP), 2012 WL 2856068, at *3 (S.D.N.Y. July 12, 2012), *report and recommendation adopted*, 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012).

District courts have broad discretion to set the amount of the statutory award within the limits provided by the Copyright Act.  *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116-17 (2d Cir. 1986); *see also Reservoir*, 2015 WL 5692105, at *5.  In cases of willful infringement, "courts in this Circuit commonly award . . . statutory damages of between three and five times the cost of the licensing fees the defendant would have paid." *Broad Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016).  When determining the appropriate amount of statutory damages to award for copyright infringement, courts may consider:  "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

### D.   Availability of Attorney's Fees and Costs Under the Copyright Act

A district court has discretion to award reasonable attorney's fees and costs to the prevailing party in a copyright action, pursuant to Section 505 of the Copyright Act.  17 U.S.C. § 505; *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995).  Although "there is no precise rule or formula for making fee determinations under § 505," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994), "district courts may consider such factors as (1) the frivolousness of

the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims

or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant*, 603

F.3d at 144 (citing *Fogerty*, 510 U.S. at 534 n.19).  "The third factor – objective

unreasonableness – should be given substantial weight." *Id.* (internal citations omitted).  An

award of attorneys' fees to a plaintiff in a copyright action is generally appropriate where the

defendant has defaulted.  *See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co.,* No. 12cv5456

(KMW) (AJP), 2013 WL 174226, at *5 (S.D.N.Y. Jan. 17, 2013) (collecting cases), *report and

recommendation adopted*, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013).

After the court decides whether an award of attorney's fees is appropriate, the court must

"ensure that the award is reasonable." *Sheldon v. Plot Commerce*, No. 15cv5885 (CBA) (CLP),

2016 WL 5107072, at *18 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016

WL 5107058 (Sept. 19, 2016).  When determining reasonable attorney's fees, the Court begins

by using the "lodestar method" to calculate a "presumptively reasonable fee." *Millea v. Metro-

N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation omitted).  The lodestar is "the product of a

reasonable hourly rate and the reasonable number of hours required by the case." *Id.*  The party

seeking attorney's fees bears the burden of demonstrating that its requested fees are reasonable,

*see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and, to meet this burden, the party must provide

the Court with contemporaneous time records that "specify, for each attorney, the date, the hours

expended, and the nature of the work done," *N.Y. State Ass'n for Retarded Children, Inc. v.

Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

When determining whether an hourly rate is reasonable, courts will "compare it to

prevailing market rates 'for similar services by lawyers of reasonably comparable skill,

experience and reputation.'" *Whitehead v. Mix Unit, LLC*, 17cv9476 (VSB) (JLC), 2019 WL

384446, at *5 (S.D.N.Y. Jan. 31, 2019) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d

Cir. 1998)), *report and recommendation adopted*, 2019 WL 1746007 (Apr. 18, 2019); *see also*

*Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006).  When

determining whether the number of hours billed is reasonable, the court should consider whether,

"at the time the work was performed, a reasonable attorney would have engaged in similar time

expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).

Recoverable costs under 17 U.S.C. § 505 may include, *inter alia*, filing fees and

reasonable process server fees.  *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015

WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL

4557147 (July 28, 2015).

## II.    PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT AND AN AWARD OF DAMAGES, FEES, AND COSTS

As a preliminary matter, this Court notes that Plaintiff's motion fails to comply with

Local Civil Rule 7.1(2) of this Court, as Plaintiff has failed to include a memorandum of law in

support of his motion.  (*See generally* Dkt.)  Instead of a memorandum, Plaintiff submitted only

a Declaration from his counsel, Richard Liebowitz, Esq. ("Liebowitz"), setting forth additional

facts not included in the Complaint, as well as citations to law in support of Plaintiff's motion.

"It is well-established that an affirmation alone will not satisfy the requirements of Rule 7.1."

*Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. R & C Transit,*

*Inc.,* No. 2:16-CV-02481 (ADS) (ARL), 2018 WL 794572, at *3 (E.D.N.Y. Feb. 7, 2018)

(internal quotations and alterations omitted) (citing *Microsoft Corp. v. K & E Computer Inc.,* No.

00cv7550, 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001) and collecting cases).

"Nevertheless, this Court has broad discretion to determine whether to overlook a party's failure

to comply with local court rules."  *Id.,* at *4 (quoting *Milner v. City of New York,* No. 10cv9384

(JGK) (GWG), 2012 WL 3138110, at *9 (S.D.N.Y. Aug. 2, 2012) (internal quotations omitted)). Given Defendant's default, as well as the relatively straightforward nature of the issues presented, this Court recommends that, in this particular case, the Court exercise its discretion to consider the substance of the Liebowitz Declaration and the legal arguments set forth therein, rather than deny the requested relief for failure to comply with the Court's rules.[2]

### A.   Plaintiff's Pleaded Allegations Are Sufficient To Entitle Him to a Default Judgment.

Before granting a default judgment, the Court must be satisfied that Plaintiff's Complaint states a claim upon which relief can be granted.  *See Au Bon Pain Corp.*, 653 F.2d at 65.  As set out above, adequate pleading of a copyright claim under Section 501 of the Copyright Act requires:  (1) the identification of a specific original work; (2) an allegation that the plaintiff owns of the copyright in that work; (3) an allegation that the plaintiff has registered the copyright, and (4) allegations addressing "by what acts and during what time the defendant infringed the copyright."  (*See* Discussion, *supra*, at Section I(C); *see also Klauber Bros.,* 2017 WL 4082483 at *2.)  Here, this Court finds that Plaintiff's Complaint adequately states a claim for copyright infringement.

As to the first and fourth pleading requirements, Plaintiff's Complaint identifies an original work – the Photograph – as the subject of Plaintiff's copyright claim.  (Compl. ¶ 7; *see also id.*, Ex. A.)  The Complaint also alleges that, on March 14, 2019, Defendant published an article, featuring the Photograph, on its Website, without obtaining Plaintiff's permission or any license from Plaintiff.  (Compl. ¶¶ 10, 11, *see also id.*, Ex. B.)  Thus, Plaintiff has adequately

---

[2] This Court does note that this is not the first time that Liebowitz has failed, in the same way, to comply with Rule 7.1, *see, e.g., Whitehead,* 17cv9476, at Dkts. 13, 18, and he is cautioned that any leeway that may have been afforded to him in the past, or in this instance, does not obviate his obligations to comply with the Court's Rules going forward.

alleged that his original work was used by Defendant, without his permission, on a specified occasion.

The second and third requirements are that Plaintiff plead copyright ownership and registration in accordance with the statute.  In his Complaint, Plaintiff alleges that he is the author of the Photograph and has, at all times, been the "sole owner of all right, title and interest in and to the Photograph, including the copyright thereto."  (Compl. ¶ 8.)  Plaintiff also alleges that he registered the Photograph with the United States Copyright Office and that the Photograph received Copyright Registration Number VA 2-144-547.  (Compl. ¶ 9.)  Such allegations are generally considered sufficient to sustain a claim under the Act.  *See Klauber Bros., Inc.*, 2017 WL 4082483 at *3 (S.D.N.Y. July 18, 2017) (claim under Copyright Act was adequately pleaded where Plaintiff alleged he had "applied for and received a United States Copyright Registration covering the Subject Design"); *see also Senisi v. John Wiley & Sons, Inc.*, No. 13cv3314 (LTS) (AJP), 2014 WL 12772203, at *2, 4 (S.D.N.Y. Mar. 28, 2014) (holding that plaintiffs had satisfied the second and third requirements for copyright infringement claim by generally alleging in complaint that they "h[e]ld valid copyrights that [were] registered with the United States Copyright Office," even if the registration numbers or registration dates were not alleged); *Palmer Kane LLC v. Scholastic Corp.*, 12 Civ. 3890 (TPG), 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) (collecting cases)).  As Plaintiff has sufficiently alleged that he owns the copyright in the Photograph and that the copyright has been registered, his Complaint satisfies the second and third pleading requirements.

For the above reasons, this Court finds that Plaintiff has adequately pleaded a copyright-infringement claim, and therefore recommends that Plaintiff's motion for a default judgment be granted.

B.      <u>**Plaintiff Is Entitled to an Award of Statutory Damages.**</u>

Plaintiff seeks $30,000 in statutory damages for willful copyright infringement, pursuant to 17 U.S.C. § 504(c).  (Liebowitz Decl. ¶ 14.)  According to his Complaint and Declaration, Plaintiff did not register the copyright in the Photograph until after Defendant's infringing act (*see* Compl. ¶ 10; McGlynn Decl. ¶ 3), but he maintains that 17 U.S.C. § 412 does not preclude him from recovering statutory damages because the effective date of his copyright registration was within three months of the Photograph's initial publication (Liebowitz Decl. ¶ 8; *see also supra*, at n.1).  Plaintiff also asserts, through counsel, that, because he has elected to seek statutory damages in lieu of actual damages, he has not submitted evidence of actual damages, including any lost licensing fees.  (Liebowitz Decl. ¶ 18 (stating that Plaintiff "respectfully declines to submit evidence of his actual losses in the form of licensing fee history").)  Plaintiff's counsel states that Plaintiff is seeking statutory damages as a "deterrent to willful infringers" (Liebowitz Decl.), and that the amount of the statutory award he requests is "consistent with a long-line of cases in this Circuit which award $30,000 per photograph where defendant has defaulted in a copyright infringement action" (*id.* ¶ 19).

As a threshold matter, this Court accepts the evidence contained in Plaintiff's Declaration – submitted in response to this Court's request – that he registered his copyright within three months of the first publication of the Photograph.  (McGlynn Decl. ¶¶ 2, 3; *id.*, Exs. A, B.)  Specifically, based on Plaintiff's statements and attached documentation, the Court accepts that the Photograph was first published on March 13, 2019, and that the effective date of Plaintiff's copyright registration was March 27, 2019 (McGlynn Decl. ¶¶ 2, 3; *id.*, Exs. A, B), well within the three-month grace period.  Based on that evidence, this Court finds that Plaintiff

may recover statutory damages. *See* 17 U.S.C. §§ 412(2), 504(c); *see also, e.g.*, *Getaped.com*, 188 F. Supp. 2d at 400.

Plaintiff has not provided sufficient evidence, however, to support his request for statutory damages in the amount of $30,000. When determining the proper statutory damages award, courts may consider several factors, including: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant*, 603 F.3d at 144. In this case, Plaintiff has provided virtually no information to enable the Court to analyze these factors and assess an appropriate damages award, particularly with respect to any expenses saved by Defendant or revenue lost by Plaintiff. Even if, as a consequence of Defendant's default, Plaintiff has been unable to ascertain the extent of any profits that Defendant may have earned from its infringing use of the Photograph, Plaintiff could still have provided the Court with information regarding the licensing fees that he typically charged at the relevant time (assuming he, in fact, licensed his work), but he chose not to do so. Instead, Plaintiff has chosen to rely solely on the assertion of his counsel, Liebowitz, that there is a "long-line of cases in this Circuit which award $30,000 per photograph where defendant has defaulted in a copyright infringement action." (Liebowitz Decl. ¶ 19 (collecting cases).) Liebowitz, however, has offered no explanation as to how the cited cases are factually analogous to those presented here. (*See id.*)

On this point, it is worth noting that the Declaration filed by Liebowitz in connection with Plaintiff's motion for a default judgment apparently mirrors submissions that Liebowitz has made in other cases, including in *Seelie v. Original Media Grp. LLC*, No. 19-cv-5643 (BMC),

2020 WL 136659 (E.D.N.Y. Jan. 13, 2020), in which the Eastern District recently addressed the adequacy of the same damages request that Plaintiff seeks here – *i.e.*, $30,000 in statutory damages under 17 U.S.C. § 504(c)(1).  In *Seelie*, the court noted that it was up to the plaintiff to submit sufficient evidence to support the amount of statutory damages being requested, and that the plaintiff, in that case, did not provide sufficient evidence or "much assistance" to the court, to enable it to apply the relevant factors in determining damages.  *Id.* at *2.  As in this case, the plaintiff in *Seelie* had "respectfully declined" to disclose his licensing fee, and the court explained that, by failing to disclose this information, the plaintiff had greatly limited the court's "ability to analyze the relevant factors used to determine the appropriate award, as those factors include consideration of revenue lost by the copyright holder."  *Id.*

Furthermore, the court in *Seelie* noted that the plaintiff had not argued the facts of his case to support his statutory damages request and had instead had merely asserted – in the same language used by Liebowitz here – that there was a "long-line of cases in this Circuit which award $30,000.00" upon default judgments to plaintiffs in copyright-infringement cases.  *Id.* The court stated that it had reviewed the cases cited by Liebowitz – the same string of cases that he has cited here – and found that, for the Copyright Act claims in each case, the courts had analyzed the relevant factors based on types of information that the plaintiff in *Seelie* had not provided.  *See id.*  The court further observed that Liebowitz had consistently engaged in "cherry-picking of cases that support[ed] statutory awards that at least lean[ed] toward windfall recoveries[,] without disclosing that, in a number of single-instance infringements against obscure defendants like the [defendant in the *Seelie* case], he ha[d] recovered mere hundreds of dollars in statutory damages."  *Id.*, at *5.  Although the court, in *Seelie*, ultimately granted a statutory damages award of $5,000, it noted that its analysis was "hampered based on

defendant's default and the dearth of information that plaintiff has provided." *Id.* The court specifically commented that the most important factor it had considered was the plaintiff's decision to withhold his actual licensing fee, a decision that, in the court's view, suggested that plaintiff's usual licensing fee was likely in the hundreds-of-dollars range, rather than the thousands. *Id.* Thus, the court held that a statutory award of $5,000 would "satisfy the dual purposes of statutory damages – compensation and deterrence." *Id.*

The court in *Seelie* did take care to note that the plaintiff, in that case, had at least alluded to some of the factors that courts should consider when determining statutory damages. *Id.* at *4. For example, the plaintiff had "properly asserted" that the defendant's failure to respond to both the summons and complaint and the default judgment motion was "indicative of willfulness." *Id.* The plaintiff had also argued that, as the defendant was a publisher, it should have had a greater knowledge of copyright laws than others generally would. *Id.* In this case, while Defendant's default does entitle Plaintiff to an inference that Defendant's infringement was willful, Plaintiff has not even made this point; indeed, he has engaged in essentially *no* legal analysis at all to justify the damages award he seeks.

This Court also notes that, while courts in this District have at times, granted the maximum available statutory damages upon a defendant's default, the grant of such damages has typically been made in cases in which the plaintiffs made factual showings "about how the defendant had continued its conduct despite receiving notices to end its infringing activity." *Whitehead*, 2019 WL 384446, at *4. In this instance, Plaintiff has not proffered any such facts. Plaintiff has not even alleged that he attempted to notify Defendant of its infringing activity, much less that Defendant refused to take down the allegedly infringing post.

Under all of these circumstances, this Court finds that Plaintiff has shown no greater entitlement to statutory damages than the amount held appropriate in *Seelie*, and, accordingly, I recommend that Plaintiff be awarded statutory damages for Defendant's copyright infringement in the amount of $5,000, both to compensate Plaintiff for his losses and as a deterrent to future infringement.

### C.       Attorney's Fees and Costs

Plaintiff also seeks to recover $2,975 in attorney's fees and $440 in costs pursuant to 17 U.S.C. § 505.  (*Id.* ¶ 15.)  As a result of Defendant's default, and in light of the timing of Plaintiff's copyright registration, this Court finds that Plaintiff is entitled to recover fees and costs, *see* 17 U.S.C. § 412, although in a lesser amount than that sought.

### 1.       Attorneys' Fees

As set out above, the Court engages in a lodestar analysis to determine if the fees requested by Plaintiff's counsel were reasonably incurred.  *Millea*, 658 F.3d at 166.  This requires the Court to evaluate both the reasonableness of counsel's hourly rate, and the reasonableness of the time he spent on the action.  *Id.*

The only attorney for whom fees are requested is Liebowitz, who states that he is "lead counsel" for Plaintiff in this case.  (Liebowitz Decl. ¶ 1.)  Liebowitz states that he graduated from the Maurice A. Deane School of Law at Hofstra University in 2015, that he is admitted to practice law in the State of New York and in this Court, and that he is the "founding member and managing partner at Liebowitz Law Firm, PLLC" (the "Liebowitz Firm").  (*Id.* ¶¶ 1, 21.)  According to Liebowitz, the Liebowitz Firm is a "boutique law firm" that "specializes in copyright enforcement of photographs and videos."  (*Id.* ¶ 21.)  Liebowitz represents that he has developed expertise in the copyright field as the result of filing over 1,000 copyright-

16

infringement lawsuits in both the Southern and Eastern Districts of New York since January

2016.  (*Id.*)  Liebowitz seeks to be compensated for his time on this case at the rate of $425 per

hour, which he asserts is "well below what other courts in this district have found as reasonable

for partners."  (*Id.* ¶ 22 (citing *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt.*

*Compliance, LLC*, No. 13cv2493 (KBF), 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014)).)

He claims to have spent a total of seven hours litigating this case.

### a.      Reasonable Hourly Rate

As set out above, "[a] reasonable hourly rate is one in line with rates 'prevailing . . . in

the community for similar services by lawyers of reasonably comparable skill[,] expertise and

reputation."  *Regulatory Fundamentals*, 2014 WL 4792082, at *1 (internal quotation marks and

citation omitted); *accord Whitehead*, 2019 WL 384446, at *5.  Although Liebowitz provides a

string cite of cases in which courts have found hourly rates of $500 to $800 to be reasonable for

law-firm partners specializing in intellectual-property litigation (*see* Liebowitz Decl. ¶ 22), he

provides no analysis as to how the attorneys who were awarded those rates were comparable to

him in skill, expertise, or reputation.  In this regard, he does not address whether he practices at a

law firm that is comparable to the firms at which those lawyers practiced, or whether the nature

of his practice is similar, or whether he has had a similar number of years of practice experience.

Nor, with respect to the comparability of his level of skill and reputation, does Liebowitz address

the fact that, on multiple occasions, he has faced judicial criticism of his work that may bear on

these issues.  Overall, factors relevant to the analysis suggest that the $425/hour rate that

Liebowitz requests should be reduced.

First, Liebowitz appears to have overstated his role in this case.  While, as noted above,

Liebowitz represents that he is the "lead counsel" for Plaintiff (*id.* ¶ 1), the Docket for the action

reflects that only Liebowitz – and no other attorney – has appeared in the action on Plaintiff's behalf.  Further, Plaintiff is not seeking compensation for any legal professional other than Liebowitz himself, even a paralegal.  (*See* Liebowitz Decl. ¶ 22.)  Under these circumstances, it seems apparent that Liebowitz has merely been serving as Plaintiff's counsel, not as his "lead" counsel.

Second, it not only appears that Liebowitz handled this case alone, but that his firm is quite small,[3] and that this case itself is relatively small, involving only a single copyrighted work and a single, online infringing use.  Moreover, a cursory review of the Court's docket suggests that Liebowitz often seems to handle cases with allegations similarly modest to those made here, and that most of his many filed cases have not resulted in litigation on the merits.  *See Seelie*, 2020 WL 136659, at *5 (noting that Liebowitz had filed a number of single-infringement cases, resulting in small settlements); *see also McDermott v. Monday Monday LLC*, No. 17cv9230 (DLC), 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018) (noting that, in most instances, cases filed by Liebowitz in this District have been closed within three months of filing).

Third, as recounted above, Liebowitz states that he only began practicing law in 2015 and filing copyright infringement lawsuits in 2016, which means that he has had only four to five years' experience in the field, making him the equivalent of what, at most law firms, would be considered a mid-level associate, not a partner.  Yet most of the authority that Liebowitz cites to support his requested billing rate has involved judicial consideration of rates requested by attorneys who were not only partners in larger law firms (making them dissimilar to Liebowitz in that respect), but who also had significantly more years of experience than Liebowitz, himself,

---

[3] In this regard, this Court notes that the website for the Liebowitz Firm does not readily identify any attorneys (other than Liebowitz) who may be members of or associated with the firm.  *See* https://liebowitzlawfirm.com.

has demonstrated.  For instance, in *Regulatory Fundamentals* (cited in Liebowitz Decl. ¶ 22 as holding that, "[i]n recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour")), the court relied on cases where, for example, the rate of $540 per hour had been approved for a partner with 24 years of experience, and the rate of $485 per hour had been approved for a partner with 16 years of experience, *see Regulatory Fundamentals*, 2014 WL 4792082, at *2.  Similarly, in *Broadcast Music, Inc. v. Pamdh Enterprises, Inc.* (cited in Liebowitz Decl. ¶ 22 as "collecting cases approving partners' hourly rates of $400 to $735")), the court found an hourly rate of $570 to be reasonable for an attorney who had practiced for 15 years and was the head of the trademark and copyright practice at the large law firm where she worked, *see Broadcast Music, Inc. v. Pamdh Enters., Inc.*, No. 13cv2255 (KMW), 2014 WL 2781846, at *6-7 (S.D.N.Y. June 19, 2014).  These experience levels, for law firm partners with two-to-three times Liebowitz's years of practice, cannot be considered "comparable" to his for the purpose of assessing the reasonableness of his requested rate.

Fourth, as also seems relevant to his "expertise," and certainly to his level of "skill" – both of which should be considered in determining his reasonable rate, *see Regulatory Fundamentals*, 2014 WL 4792082, at *1 – this Court finds that the quality of Liebowitz's submissions in this case raises additional concerns.  As discussed above, Liebowitz initially made factual assertions as to which he appeared not to have personal knowledge; Plaintiff's submissions lacked certain information (in particular, his licensing fee) that would have been relevant to the Court's damages analysis; and Liebowitz's citations to legal authority – made by way of a declaration, rather than a legal memorandum, in violation of the Court's local rules – generally lacked meaningful analysis.  This is not the only case in which Liebowitz's

submissions have evidenced such deficiencies.  *See, e.g.*, *Jerstad*, 2019 WL 6769431, at *5-6
(noting Liebowitz's failure to compare and apply his "long string cite of cases" to the case at bar,
and further noting that submissions made by Liebowitz" lack[ed] much of the relevant factual
information, *e.g.*, when Defendant's infringement occurred, how long the webpage was up, and
Plaintiff's typical license fees"); *Romanowicz v. Alister & Paine, Inc.,* No. 17cv8937 (PAE)
(KHP), 2018 WL 4762980, at *7 (S.D.N.Y. Aug. 3, 2018) (noting that "a review of the filings
make it clear that minimal work and brain power went into this matter," and that "counsel was
incredibly sloppy"), *report and recommendation adopted,* No. 17cv8937 (PAE) (KHP), 2018
WL 4759768 (S.D.N.Y. Oct. 1, 2018).

Fifth, to the extent an attorney's "reputation" should be taken into account by the Court in
assessing the attorney's reasonable hourly rate, *see Regulatory Fundamentals*, 2014 WL
4792082, at *1, it is undeniable that Liebowitz has earned himself a poor reputation in this
District, in a number of ways.  Indeed, as recently noted by another judge of this Court,
Liebowitz has the "dubious distinction" of being "one of the most frequently sanctioned lawyers,
if not the most frequently sanctioned lawyer, in the District."  *Usherson v. Bandshell Artist
Mgmt.,* No. 19cv6368 (JMF), 2020 WL 3483661, at *1 (S.D.N.Y. June 26, 2020) (sanctioning
Liebowitz for "repeated violations" of court orders and "lies under oath" to the court, and
collecting an appendix of 40 cases in this District and others levying sanctions against
Liebowitz); *see also, e.g., Berger v. Imagina Consulting, Inc.,* No. 18cv8956 (CS), 2019 WL
6695047, at *4 (S.D.N.Y. Nov. 1, 2019) (holding Liebowitz in contempt and ordering him to
show cause why he should not be incarcerated for failure to comply with a court order to pay
sanctions); *Rice v. NBCUniversal Media, LLC,* No. 19cv447 (JMF), 2019 WL 3000808, at *1
(S.D.N.Y. July 10, 2019), *reconsideration denied,* 2019 WL 3752491 (S.D.N.Y. Aug. 8, 2019)

("it is no exaggeration to say that there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone"); *McDermott,* 2018 WL 5312903, at *3 (S.D.N.Y. Oct. 26, 2018) (characterizing Liebowitz's tactics as "questionable" and concluding "it is undisputable that Mr. Liebowitz is a copyright troll"). Presumably, a reasonable client would not be willing to pay rates at the higher end of the norm for a lawyer with a reputation that, generously put, is "questionable."

Finally, this Court notes that, while Liebowitz has touted the large number of cases he has litigated in this District, he has failed to inform the Court of any hourly rate(s) that courts in this District have previously found reasonable to compensate him for his time, in cases where fees have been awarded.  Based on this Court's own research, it finds that, in some recent cases, courts in this District have awarded Liebowitz the rate of $350 per hour, which is less than he has requested in this case.  *See Romanowicz,* 2018 WL 4762980, at *7 (recommending that Liebowitz be awarded $350/hour as a reasonable associate rate), *report and recommendation adopted*, 2018 WL 4759768; *Jerstad*, 2019 WL 6769431 (noting that other courts had recently awarded Liebowitz a lower rate than he requested), *report and recommendation adopted*, 2020 WL 58237, at *1; *Whitehead*, 2019 WL 384446, at *5 (awarding Liebowitz his then-requested hourly rate of $350); *Myeress v. Elite Travel Grp. USA,* No. 18cv340 (AJN), 2018 WL 5961424, at *5 (S.D.N.Y. Nov. 14, 2018) (same).  While consistency in the awarding of particular rates to particular attorneys is often desirable, even this $350-per-hour rate now seems high, given that the courts that have awarded Liebowitz that rate did not have the benefit of the recent decision in *Usherson,* 2020 WL 3483661, at *1, cataloging, in detail, the ever-growing body of case law in this District and elsewhere in which courts have found Liebowitz to have engaged in sanctionable conduct.

Based on recent authority, and for all of the reasons discussed above, this Court finds that the hourly rate of $425 that Liebowitz requests would not be reasonable for his work in this case, and that the Court should therefore decline to approve it.  Based on his skill, expertise, and reputation, I recommend that Liebowitz be awarded an hourly rate of $275.  While this rate is lower than the $350-per-hour rate that Liebowitz has been awarded in other recent cases, it would still fall within the range of rates that have been approved in this District for comparably experienced civil litigators with small firms (although at the lower end of that range), *see, e.g., Barcroft Media, Ltd. v. Fashion In Me Inc.,* No. 16cv7574 (LGS) (DF), 2018 WL 4565889, at *6 (S.D.N.Y. June 5, 2018) (in a copyright case, after default, recommending that a fee of $300 be awarded to an associate at a boutique firm, where associate had been admitted to bar for six years and specialized in copyright litigation); *report and recommendation adopted,* 2018 WL 4568727 (S.D.N.Y. July 25, 2018), and, in this Court's view, it would be more consistent with Liebowitz's experience and the quality of his submissions.

### b.   <u>Reasonable Hours</u>

Next, the Court must determine the number of hours reasonably required by the case.  As noted above, to allow a court to determine an attorney's reasonable hours, the prevailing party must provide contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc.*, 711 F.2d at 1148.  Here, while Liebowitz states in his Declaration that he spent a total of seven hours on this case, and he provides a chart that purportedly breaks down the description of his services, the dates when the work was performed, and the hours expended on each specified task (Liebowitz Decl. ¶ 6), he nowhere confirms that the time was contemporaneously recorded, and he provides no back-up time records to demonstrate this.  Absent confirmation that Liebowitz's

chart reflects contemporaneous time records, the Court would be justified in denying Plaintiff *any* recovery of legal fees, at all.  The summary chart that Liebowitz has presented, however, is similar to charts that he has submitted in other cases, *see, e.g.*, *Jerstad,* 18cv10470, at Dkt. 27; *Whitehead,* No. 17cv9476, at Dkt. 18, where courts have apparently accepted the time entries shown as contemporaneously made, *see Jerstad,* 2019 WL 6769431, at *5-6; *Whitehead,* 2019 WL 384446, at *6.  Although this Court will therefore proceed to examine the reasonableness of the hours included in Liebowitz's chart, I recommend that he be required to submit to the Court either a sworn affidavit or a declaration made under penalty of perjury, prior to the conclusion of the 14-day objection period, confirming that his time was, in fact, contemporaneously recorded (and this his summary chart reflects that recorded time), and I further recommend that, if no such affidavit or declaration is filed, then the request for fees be denied.

  As for the reasonableness of the reflected hours, this Court notes that, just as courts in this District have typically awarded Liebowitz a lower rate than he requests in this case, so too have courts tended to reduce his requested hours.  A total of seven hours is not, inherently, a large number of hours to spend preparing and commencing a suit, and litigating it through a default motion.  Still, Liebowitz's time appears excessive for the identified tasks.

  For one thing, it should not have been necessary for Liebowitz to spend 3.5 hours to "draft and research" the default judgment application, including his Declaration (Liebowitz Decl. ¶ 22), given that Liebowitz's Declaration appears to have been based on a template that he has used in other cases, with no specific factual analysis.  In *Whitehead*, the court reduced to 1.5 hours the Liebowitz billed for preparing a default judgment motion, noting the similarity of Liebowitz's submissions to those he had made before, and also noting that (as here), he had merely provided the "legal standard for determining statutory damages" and had failed "to apply

the legal standard to the facts of the case." *Whitehead*, 2019 WL 384446, at *6; *see also*

*Romanowicz*, 2018 WL 4762980, at *6 (finding that preparation of default judgment motion

should not have taken more than 1.5 hours, where, *inter alia*, Liebowitz's submitted declaration

had "multiple string cites that counsel appear[ed] to have copied from filings in his many other

copyright cases").

Additionally, it would not be appropriate to compensate Liebowitz – at least not at the

rate of $275 per hour – for time spent on largely ministerial tasks, such as the hour he reportedly

spent "[p]rocess[ing] service of summons and complaint" and "[r]equest[ing] Clerk's Entry of

Default."  (Liebowitz Decl. ¶ 22; *see Romanowicz,* 2018 WL 4762980, at *7 (recommending

reduction in Liebowitz's hours to account for, *inter alia*, the inclusion of tasks "that could have

been performed by an associate or paralegal); *Jerstad,* 2019 WL 6769431, at *6 (recommending

reduction of Liebowitz's requested 9.5 hours to 6 hours, where, *inter alia*, he reportedly "spent

30 minutes drafting an entry for default, which is merely completing a one-page template," and

where he "spent another 30 minutes to "process service," which would seem to be the task of a

paralegal").

In order to address these issues, and the fact that little case-specific information has been

presented in this case – from the initial filing of a short and largely boilerplate Complaint to the

eventual filing of an abbreviated and largely boilerplate default motion -- I recommend that

Liebowitz's reported hours be reduced by 25 percent, yielding 5.5 hours.  *See, e.g., E.S. v.*

*Katonah-Lewisboro Sch. Dist.,* 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) (Percentage reduction

appropriate "when attorneys engage in less skilled work, like filing and other administrative

tasks . . . [and] where the requested fee is excessive because the stated number of hours is greater

than that which should have been required for the work produced"), *aff'd sub nom. E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.,* 487 F. App'x 619 (2d Cir. 2012).

**c.     Lodestar**

Applying a $275/hour rate to 5.5 hours of attorney time yields a lodestar of $1,512.50 for attorneys' fees in this case.  As the submissions before the Court suggest no reason to deviate from the lodestar, I accordingly recommend that, if fees are awarded, they be awarded in this amount.

**2.     Costs**

Finally, Plaintiff seeks to recover $440 in costs, representing payment of the Court's $400 filing fee and a $40 fee for service of process.  (Liebowitz Decl. ¶ 20.)  Although Plaintiff has submitted no back-up support for any requested costs, the Court may take judicial notice of costs reflected on the Docket and award such costs "even when counsel has failed to provide documentation."  *Whitehead*, 2019 WL 384446, at *6 (citing *BWP Media USA, Inc. v. Uropa Media, Inc.*, No. 13-CV-7871 (JSR) (JCF), 2014 WL 2011775, at *4 (S.D.N.Y. May 16, 2014) (taking judicial notice of court filing fee, but denying other costs for lack of sufficient documentation); *Lee v. Santiago*, No. 12-CV-2558 (PAE) (DF), 2013 WL 4830951, at *14 (S.D.N.Y. Sept. 10, 2013) (same)).  For this reason, I recommend that Plaintiff be awarded his filing fee of $400, but not the requested process-server fee.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that Plaintiff's Motion for Default Judgment be granted.  I also respectfully recommend that judgment against Defendant be entered in the following amounts:

(1)     Statutory damages in the amount of $5,000;

(2)     Attorneys' fees in the amount of $1,512.50, provided that
        Plaintiff's counsel first confirms to the Court, within
        14 days of the date of this Report and Recommendation,
        that his proffered chart showing the attorneys' fees incurred
        in connection with this case (*see* Liebowitz Decl. § 22)
        reflects contemporaneously recorded time entries; and

(3)     Costs in the amount of $400.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).

Such objections, and any responses to objections, shall be filed with the Clerk of Court, with

courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States

Courthouse, 500 Pearl Street, Room 1310, New York, New York 10007.  Any requests for an

extension of time for filing objections must be directed to Judge Daniels.  FAILURE TO FILE

OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S.

140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993);

*Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58

(2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation on Defendant by mail, and to file proof of such service on the Docket of this action, no later than July 6, 2020.

Dated:  New York, New York
       July 1, 2020

                              Respectfully submitted,


                              DEBRA FREEMAN
                              United States Magistrate Judge

Copy to:

Plaintiff's counsel (via ECF)